UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABDUL MOHAMMED, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 6525 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| NAPERVILLE COMMUNITY UNIT SCHOOL | ) | |
| DISTRICT 203, DAN BRIDGES, NANCY VOISE, | ) | |
| ERIN ANDERSON, SUSAN VIVIAN, ANDREA | ) | |
| SZCZEPANSKI, RACHEL WEISS, KRISTIN | ) | |
| FITZGERALD, DONNA WANDKE, CHARLES | ) | |
| CUSH, KRISTINE GERICKE, JOSEPH KOZMINSKI, | ) | |
| PAUL LEONG, JANET YANG ROHR, OTTOSEN | ) | |
| BRITZ KELLY COOPER GILBERT & DINOLFO | ) | |
| LTD, and JOE MILLER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In November 2018, Abdul Mohammed filed a *pro se* suit (not this one) against Naperville

Community Unit School District 203 and two of its employees, Erin Anderson and Susan Vivian,

alleging violations of 42 U.S.C. § 1983, the Illinois Hate Crimes Act ("IHCA"), 720 ILCS 5/12-

7.1, and Illinois common law. *Mohammed v. Anderson*, No. 18 C 8393 (N.D. Ill. removed Dec.

21, 2018) ("*Mohammed I*"), ECF No. 1-1. The defendants ultimately moved for sanctions based

on Mohammed's misconduct. *Id.*, ECF No. 98. The court granted the motion and dismissed the

suit with prejudice. *Id.*, ECF Nos. 117-119 (reported at 2019 WL 3943669 (N.D. Ill. Aug. 21,

2019)). The Seventh Circuit affirmed. *Mohammed v. Anderson*, __ F. App'x __, 2020 WL

6495522 (7th Cir. Nov. 5, 2020); *cf. Mohammed v. NLRB*, No. 20-3178 (7th Cir. Jan. 11, 2021)

(barring Mohammed from "proceeding in forma pauperis in any new or pending case, in the

district court or court of appeals, until he has paid, in full, all outstanding fees and costs for all of

his lawsuits"); *In re Mohammed*, No. 20 C 3479 (N.D. Ill. Aug. 13, 2020) (imposing a 12-month filing bar on any new civil lawsuits by Mohammed in this District), *aff'd*, __ F. App'x __, 2021 WL 218317, at *1 (7th Cir. Jan. 21, 2021) (holding that "the Executive Committee reasonably disciplined Mohammed for abusive litigation practices").

Less than three weeks after the dismissal of *Mohammed I*, Mohammed filed this suit against the School District, Anderson, Vivian, and several new defendants: four more School District employees, the seven members of the School Board, the law firm Ottosen Britz Kelly Cooper Gilbert & Dinolfo Ltd., and Joe Miller, an attorney at the firm. Doc. 1-1. (Docket entries in this suit are cited as Doc. __, while docket entries in *Mohammed I* are cited as *Mohammed I*, ECF No. __.) In addition to claims dismissed in *Mohammed I*, this suit alleges violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*., and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., and other violations of § 1983, the IHCA, and Illinois common law. Doc. 1-1. Defendants move under Civil Rule 12(b)(6) to dismiss this suit. Docs. 17, 19.

The court acts on its own motion to dismiss the claims that the judgment in *Mohammed I* bars under the claim preclusion doctrine. (Ottosen Britz and Miller seek dismissal on collateral estoppel, or issue preclusion, grounds, Doc. 17 at 8-10, but issue preclusion differs from claim preclusion, and the latter better fits the present circumstances.) Defendants' motions to dismiss are denied as moot insofar as they challenge the precluded claims on other grounds. The motions otherwise are granted in part and denied in part.

### Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N.*

*Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Mohammed's briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The law requires the court to set forth the facts as favorably to Mohammed as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy—which means that the court sets forth those facts not because it finds them to be true, but only because Mohammed alleges them. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

On April 3, 2016, Mohammed's wife was arrested for domestic battery after she attacked and injured him with her cell phone. Doc. 1-1 at ¶ 8. Mohammed suffered a traumatic brain injury, requiring him to see a neurologist, neuropsychologist, and psychiatrist. *Id*. at ¶ 2.

On January 17, 2017, Mohammed entered into an agreement with Defendants providing that Vivian, a school counselor, would not provide counseling to his children. *Id*. at ¶ 13; Doc. 39 at 20. On February 19, Defendants caused reports to be filed with various state agencies falsely alleging that Mohammed physically and sexually abused his children. Doc. 1-1 at ¶ 14. On February 22, in violation of their agreement with Mohammed, Defendants encouraged Vivian to counsel his children, and she continued to do so until May 2017. *Id*. at ¶ 16. Through that counseling, Vivian and Rachel Weiss, another School District employee, "brainwashed" Mohammed's children into believing that he was a child molester, that he had raped their mother, and that they should not go near him. *Id*. at ¶¶ 4, 18.

Mohammed asked the School District to provide him with the background check reports conducted on its school bus drivers due his concern—based on a television news report—that many school bus drivers had criminal histories. *Id*. at ¶¶ 22-23. In a December 4, 2018 email, Nancy Voise, the School District's Assistant Superintendent, told Mohammed that she could not provide personal information about the School District's bus drivers at that time. *Id*. at ¶ 24.

Since March 2019, Defendants have forbidden Mohammed from dropping off lunch for his son at school, something he had done without incident for three years before filing *Mohammed I*. *Id*. at ¶¶ 35-36. As a result, Mohammed's son has been deprived of lunch. *Id*. at ¶¶ 37-38. Other parents are allowed to drop off their children's lunches. *Id*. at ¶¶ 149, 151.

## Discussion

Mohammed's twenty-five-count complaint asserts seven counts under 42 U.S.C. § 1983 (Counts 2-4, 8, 19-20, 22), four counts under the Rehabilitation Act (Counts 14-17), one count under the ADA (Count 18), four counts under the IHCA (Counts 5-7, 21), and nine counts under Illinois common law (Counts 1, 9-13, 23-25). Apart from Counts 10 and 11, which name only the School District, Mohammed brings every count against all Defendants.

## I.     Respondeat Superior Claim and Good Faith and Fair Dealing Claim

Two of the complaint's counts are labeled respondeat superior and covenant of good faith and fair dealing. Doc. 1-1 at ¶¶ 116-118 (Count 10), 162-168 (Count 24). Although those terms describe legal concepts, neither is a cause of action under Illinois law. *See Wilson v. Edward Hosp.*, 981 N.E.2d 971, 980 (Ill. 2012) (holding that "vicarious liability is not itself a claim or cause of action"); *Zeidler v. A & W Rests., Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("The covenant [of good faith and fair dealing] is only an aid to interpretation, not a source of contractual duties or liability under Illinois law."). Those counts accordingly are dismissed.

## II. Claims Against Szczepanski, Fitzgerald, Wandke, Cush, Gericke, Kozminski, Leong, and Rohr, and *Monell* Claims Against the School District

The claims against eight individual School District defendants—Andrea Szczepanski, Kristin Fitzgerald, Donna Wandke, Charles Cush, Kristine Gericke, Joseph Kozminski, Paul Leong, and Janet Yang Rohr—are dismissed for a simple reason: Mohammed makes no factual allegation as to anything they did. The only allegations in the complaint as to those individuals are that they are employed by the School District (Szczepanski) or sit on the School Board (the other seven). Doc. 1-1 at ¶ 4.

Starting with the § 1983 claims, Defendants assume that Mohammed sues them in both their individual and official capacities. Doc. 20 at 28 (asserting a qualified immunity defense, which implies individual capacity); *id.* at 14 (asserting that the claims are barred by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), which implies official capacity). For individual capacity claims, "§ 1983 liability is premised on the wrongdoer's personal responsibility." *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012). This means that a plaintiff must allege how each defendant "caused or participated in the alleged deprivation of the plaintiff's constitutional rights." *Levin v. Madigan*, 692 F.3d 607, 621 (7th Cir. 2012). The complaint alleges nothing about Szczepanski, Fitzgerald, Wandke, Cush, Gericke, Kozminski, Leong, or Rohr, so the § 1983 claims against them in their individual capacities are dismissed.

The lack of any allegations about the school board members also dooms all *Monell* claims against the School District and all official capacity claims against individual School District defendants. The *Monell* claims and official capacity claims are legally identical: "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The School District argues that the complaint fails to allege any of the three bases for *Monell* liability: "[1] an express policy, [2] a widespread

5

practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or … [3] the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Far from alleging a policy or practice, Mohammed alleges that he was singled out for unfavorable treatment. Doc. 1-1 at ¶¶ 31-32, 149, 151. Thus, in opposing dismissal, he relies on the third basis for *Monell* liability: "the words uttered by Board Member Defendants … constitutes [sic] express policy as Board of the Defendant School District is the highest policymaking authority." Doc. 39 at 8. But Mohammed does not allege any such "words uttered," as neither his complaint nor his brief identifies anything that a board member said or did. As a result, the School District cannot be held liable under § 1983. *See Wragg v. Vill. of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010) ("[T]rying to accuse every Village official, as a strategy to establish municipal liability, is unhelpful; it distracts the parties and courts from focusing on the particular final policymaker whose actions are essential to the claim."). The § 1983 claims against the School District are dismissed, as are the official capacity claims against all individual Defendants.

The absence of any allegations of conduct by Szczepanski, Fitzgerald, Wandke, Cush, Gericke, Kozminski, Leong, and Rohr also dooms the state law claims against them. As the Seventh Circuit explained in a decision applying Illinois law: "The Rules of Civil Procedure set up a system of notice pleading. Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). That principle applies with equal force to conspiracy claims: "Although every conspirator is responsible for others' acts within the scope of the agreement, it remains essential to show that a particular

defendant joined the conspiracy and knew of its scope." *Ibid*. The state law claims against Szczepanski, Fitzgerald, Wandke, Cush, Gericke, Kozminski, Leong, and Rohr under Counts 1, 5-7, 9, 12-13, 21, 23, and 25 are dismissed.

## III. Claim Preclusion

Another large swath of claims are dismissed as precluded by the judgment in *Mohammed I*. A court may raise claim preclusion, or res judicata, on its own motion. *See Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) ("Nor was it improper for the district judge to invoke res judicata even though the defendants had failed to argue it. The doctrine 'is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.'") (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)). "In doing so, [a district court] may rely on judicially noticeable court documents and rulings." *Brooks-Ngwenya v. Indianapolis Pub. Schs.*, 776 F. App'x 373, 375 (7th Cir. 2019). The judgment in *Mohammed I* clearly bars many of Mohammed's claims here, and it would waste judicial resources to delve further into their merits.

The preclusive effect of *Mohammed I* is governed by federal law as to federal claims and by Illinois law as to state law claims, "unless applying [Illinois] law would be 'incompatible with federal interests.'" *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 509 (2001)). There is no such incompatibility, as the governing tests are the same. Federal claim preclusion "bars any claims that were litigated or could have been litigated in a previous action when three requirements are met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016) (quotation marks omitted). Claim preclusion under Illinois law "requires proof of three elements: (1) there was a final judgment on the merits rendered by a court of competent

jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies." *H.A.L. NY Holdings*, 958 F.3d at 632 (quotation marks omitted). The three requirements are considered in turn.

### A. Final Judgment on the Merits

The court dismissed *Mohammed I* with prejudice as a sanction for litigation misconduct. 2019 WL 3943669, at *5. Such penalty dismissals have preclusive effect as final judgments on the merits. Rule 41(b) provides: "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). Because the dismissal order in *Mohammed I*, ECF No. 119, stated it was with prejudice, it was on the merits. *See Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir. 2015) (holding that a dismissal for failure to prosecute has preclusive effect); Edward H. Cooper, 18A *Federal Practice & Procedure (Wright & Miller)* § 4440 (3d ed. 2020) ("Penalty dismissals provide a category in which there is little need to venture beyond Civil Rule 41(b) in search of preclusion answers."). Illinois courts also give preclusive effect to penalty dismissals. *See Towns v. Yellow Cab Co.*, 382 N.E.2d 1217, 1221 (Ill. 1978) (holding that a dismissal as a discovery sanction under Illinois Supreme Court Rule 273, the Illinois analog of Rule 41(b), "operated as an adjudication upon the merits").

### B. Identity of Causes of Action

Under both federal and Illinois law, two suits involve the same "cause of action" if they "aris[e] from the same transaction," a standard articulated in the Restatement (Second) of Judgments. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594-95 (2020) (alteration in original); *see also River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998). Under the "same transaction" test, "[t]wo claims are one for the purposes of

res judicata if they are based on the same, or nearly the same, factual allegations." *Czarniecki v. City of Chicago*, 633 F.3d 545, 550 (7th Cir. 2011) (federal law); *see also Manicki v. Zeilmann*, 443 F.3d 922, 925 (7th Cir. 2006) (employing this same test under Illinois law). What matters are the operative facts, not the plaintiff's legal theories, as "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 703 N.E.2d at 893. For that reason, claim preclusion "bars litigating claims which were, or could have been, decided in a prior suit, even if the fresh attempt relies on marginally different theories." *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 271 (7th Cir. 2017) (federal law) (quotation marks omitted); *see also Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1017 (7th Cir. 2014) (same, Illinois law).

At bottom, Mohammed's complaint in this suit alleges four wrongful acts: (1) Defendants caused false reports of child abuse to be filed against him on February 19, 2017, Doc. 1-1 at ¶¶ 14-15; (2) Vivian and Weiss provided counseling to his children between February and May 2017, *id*. at ¶¶ 16, 18; (3) the School District refused to give him information about school bus drivers on December 4, 2018, *id*. at ¶¶ 22-26, 28; and (4) the School District barred him from dropping off his son's lunch from March 2019 onward, *id*. at ¶¶ 35-38, 41-42. The third and fourth events post-date the filing of *Mohammed I* and clearly relate to distinct transactions, so claim preclusion does not bar claims based on those events.

But *Mohammed I* does finally resolve all claims arising from the first two events. Like the current complaint, the complaint in *Mohammed I* alleges that Mohammed's wife, Fathima, was arrested in April 2016 because she attacked him with a cell phone. *Mohammed I*, ECF No. 1-1 at ¶ 7. The complaint in *Mohammed I* next alleges that Anderson and Vivian—in

conspiracy with Mohammed's wife—made false reports of child abuse and domestic violence in late 2016 and early 2017, including on February 19, 2017. *Id*. at ¶¶ 15, 20, 26-28, 39-43. It is thus clear, solely from the face of the complaints, that *Mohammed I* encompassed the allegedly false reports about Mohammed, event (1) in the list above.

As for event (2)—the counseling that Vivian and Weiss provided to Mohammed's children—Mohammed in this suit alleges that on January 17, 2017, he reached an agreement with the School District that Vivian would not provide such counseling, and that the School District breached the agreement by letting Vivian continue to counsel his children until May 2017. Doc. 1-1 at ¶¶ 13, 16. He further alleges here that the counseling provided by Vivian and Weiss during that time brainwashed his children into thinking that he was a child molester and that he had raped their mother. *Id*. at ¶ 18. (The present complaint refers to counseling "after January 17, 2019," *ibid*., but Mohammed clarifies in his opposition brief that "2019" was a typographical error and that "2017" is the correct year, Doc. 39 at 4-5.)

The complaint in *Mohammed I* did not include allegations regarding the counseling provided by Vivian and Weiss, but that does not defeat claim preclusion as to those allegations. Mohammed's complaint in this suit alleges that he did not reference that counseling in the *Mohammed I* complaint because he learned about it only through initial disclosures in February 2019. Doc. 1-1 at ¶ 12; Doc. 39 at 1-2; *Mohammed I*, ECF No. 36. After receiving those disclosures, Mohammed regularly referred in his *Mohammed I* filings to the counseling. In March 2019 he filed a brief with this passage:

> The Plaintiff's eldest child informed him that Defendant Susan Vivian harassed her from September 2016 through to the end the school year to come up False Allegations against the Plaintiff despite an Agreement around November of 2016, between the Defendants and the Plaintiff that Defendant Susan Vivian will not provide anymore [sic] counseling to the Plaintiff's eldest child.

*Id.*, ECF No. 42, at 4.  He gave another version of those events in an April 2019 filing in

*Mohammed I*, claiming that his agreement with the School District formed on January 17, 2017,

and that the continued counseling brainwashed his children.  *Id.*, ECF No. 82 at 3.  He asserted

then, as he does now, that the counseling continued until May 2017.  *Id*. at 4.

Finally, in July 2019, Mohammed filed a brief in *Mohammed I* expressing a desire to

amend his complaint: "Petitioner has informed the Defendants' [sic] to defer any further

discovery until Plaintiff amends his Complaint."  *Id.*, ECF No. 104, at 1.  Mohammed explains in

this suit that he wanted to amend his *Mohammed I* complaint "so that he [could] add the claims

raised in the instant case to [*Mohammed I*]."  Doc. 39 at 1.  It is thus clear that Mohammed

himself believes that Vivian's and Weiss's continued counseling of his children was part of the

same group of operative facts that gave rise to *Mohammed I*.  In this, he is correct: all the

allegations in both suits about School District employees brainwashing his children and

encouraging them and his wife to file false reports in late 2016 and early 2017 belong to the

same overall narrative as the allegations in this case about School District employees' continuing

to provide counseling to his children—counseling that poisoned them against him.

That Mohammed never amended his *Mohammed I* complaint to add the counseling

allegations does not defeat claim preclusion.  The Restatement (Second) of Judgments—which,

as noted, grounds the "same transaction" test under both federal and Illinois law—rejects any

exception to preclusion based on new evidence or unamended complaints:

> A mere shift in the evidence offered to support a ground held unproved in a
> prior action will not suffice to make a new claim avoiding the preclusive
> effect of the judgment.  It is immaterial that the plaintiff in the first action
> sought to prove the acts relied on in the second action and was not permitted
> to do so because they were not alleged in the complaint and an application to
> amend the complaint came too late.

Restatement (Second) of Judgments § 25, cmt. b; *see also Hudson v. Hedge*, 27 F.3d 274, 276 (7th Cir. 1994) ("[N]ew evidence does not relieve a litigant of the preclusive effect of a (federal) judgment."). Mohammed's own egregious misconduct is what prevented him from deploying in *Mohammed I* the evidence he received in that case about the continued counseling provided to his children. Accordingly, the final judgment in *Mohammed I* satisfied the "same transaction" test not only as to the allegedly false reports of abuse, but also as to the allegedly wrongful counseling.

### C.    Identity of Parties or Their Privies

*Mohammed I* has preclusive effect only as to the defendants in that case and their privies. *See H.A.L. NY Holdings*, 958 F.3d at 632; *Bell*, 827 F.3d at 706. *Mohammed I* named the School District, Vivian, and Anderson as defendants, so it has preclusive effect as to them. All claims against Szczepanski, Fitzgerald, Wandke, Cush, Gericke, Kozminski, Leong, and Rohr have been dismissed on other grounds. That leaves five remaining defendants: Dan Bridges, Voise, Weiss, Ottosen Britz, and Miller. The complaint's allegations about Bridges and Voise concern only the bus driver and lunch claims, which are not precluded by *Mohammed I*; the false reports and counseling claims are dismissed as to them because the complaint does not implicate them in the conduct underlying those claims. Doc. 1-1 at ¶¶ 24-29, 38.

The remaining question, then, is whether Weiss, Ottosen Britz, and Miller are privies of the School District, Vivian, or Anderson. Both federal and Illinois claim preclusion law adopt a functional understanding of privity, focusing on "the [parties'] identity of interest[,] … not the[ir] nominal identity." *Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 559 (7th Cir. 2014) (Illinois law); *see also Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998) (federal law) ("[W]hether there is privity between a party against whom claim preclusion is asserted and a

party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions.").

Ottosen Britz and Miller have an identity of interest with the School District and thus are its privies. Mohammed's claims against them are based entirely on their legal representation of the School District. Doc. 1-1 at ¶¶ 5, 16. There is no allegation that any conflict arose between Ottosen Britz and Miller, on the one hand, and their client, on the other. Absent such a conflict, the client's interests are the lawyer's interests. *See Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 206 (1999) ("[A]ttorneys assume an ethical obligation to serve their clients' interests."); *In re Winthrop*, 848 N.E.2d 961, 972-73 (Ill. 2006) ("An attorney's fiduciary relationship with his client is one of undivided fidelity.") (quotation marks omitted). It follows that the judgment in favor of the School District in *Mohammed I* has preclusive effect as to the claims brought here against Ottosen Britz and Miller.

Weiss, by contrast, is not in privity with any of the *Mohammed I* defendants. Officials sued in their personal capacity are not privies of the government entity of which they are a part. *See Conner v. Reinhard*, 847 F.2d 384, 395 (7th Cir. 1988) ("[C]ourts do not generally consider an official sued in his personal capacity as being in privity with the government."). Weiss also is not a privy of Vivian or Anderson, at least as can be ascertained from the pleadings, because co-workers generally do not have identical interests. *See West v. Litscher*, 209 F. App'x 557, 560 (7th Cir. 2006) ("[W]hile these three defendants argue that they were in privity with their colleagues who secured a merits decision in the prior case, we have held that, under federal principles of claim preclusion, defendants sued individually are not in privity with each other."). *Mohammed I* therefore cannot preclude claims against Weiss.

\* \* \*

13

In sum, all claims against the School District, Anderson, Vivian, Ottosen Britz, and Miller based on the alleged false reports against Mohammed and the alleged counseling of his children are dismissed on claim preclusion grounds. *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) (affirming dismissal on claim preclusion grounds where the district court "had before him all he needed in order to be able to rule on the defense"). Counts 1-2 and 7-8 are dismissed as to those defendants. Counts 9, 12-13, and 22 are dismissed as to those defendants insofar as they are grounded on the false reports and counseling allegations. Finally, Counts 23 and 25 arise from the alleged agreement that Vivian would not counsel Mohammed's children. Doc. 1-1 at ¶¶ 159-161, 169-176. Those counts are dismissed as to Vivian and the School District, and because their underlying allegations implicate only those two defendants, the counts are dismissed as to the other defendants as well.

## IV.    School Bus Driver and Lunch Drop-Off Claims

The complaint connects only two individual defendants, Bridges and Voise, with the School District's refusals to give Mohammed information about its school bus drivers and to let him bring his son's lunch to school. Doc. 1-1 at ¶¶ 24-28 (alleging that Voise sent Mohammed an email on December 4, 2018 refusing to give him information about the bus drivers); *id.* at ¶ 38 (alleging that Bridges and Voise "forced me to stop dropping Lunch for my son"). The claims arising from those events—encompassed in Counts 3-6 and 14-21, and in portions of Counts 9, 12-13, and 22—are therefore dismissed as to all defendants except Bridges, Voise, and the School District. *See Bank of America*, 725 F.3d at 818. As to those three defendants, the allegations fail to state a claim under any of the theories articulated by Mohammed.

14

A.      **Federal Claims**

1.      **Rehabilitation Act and ADA Claims**

The complaint states two counts for disability discrimination under the Rehabilitation

Act, one count for disability discrimination under Title II of the ADA, and two counts for

retaliation under the Rehabilitation Act.  Doc. 1-1 at ¶¶ 129-147.  As "[t]he relevant provisions

and implementing regulations of the Rehabilitation Act and the ADA are materially identical …

courts construe and apply them in a consistent manner."  *A.H. ex rel. Holzmueller v. Ill. High*

*Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (quotation marks omitted).  Neither statute

imposes individual liability, *see Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d

634, 644 (7th Cir. 2015) (holding that school district employees were properly dismissed "for the

discrimination and retaliation claims arising directly under the Rehabilitation Act and the

ADA"), so those claims are dismissed as to Bridges and Voise, leaving only the School District.

For the disability discrimination claims, Mohammed alleges that his brain injury

precludes him from preparing his son's lunch before 8:00 a.m., and therefore that prohibiting

him from bringing lunch during the day discriminates against him by reason of his disability.

Doc. 1-1 at ¶¶ 2, 131.  Those claims are dismissed because Mohammed fails to allege that he is a

"qualified individual with a disability," a prerequisite to relief under both statutes.  *See* 29 U.S.C.

§ 794(a); 42 U.S.C. § 12132.

The term "qualified individual" means "an individual with a disability who … meets the

essential eligibility requirements for the receipt of services or the participation in programs or

activities provided by a public entity."  42 U.S.C. § 12131(2) (ADA); *see also Washington v.*

*Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 849-50 (7th Cir. 1999) (holding that the meaning of

"qualified individual" under the Rehabilitation Act is the same as under the ADA).  The School

District argues that Mohammed has not identified a service, program, or activity it provides for

15

which he meets the eligibility requirements, placing him outside the definition of "qualified individual." Doc. 20 at 21. Mohammed does not respond to this point, thereby forfeiting any opposition to dismissal on that ground. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate."). Even putting aside forfeiture, the School District is correct on the merits, as it is incoherent to call "permission to bring lunch to a student" a "program[] or activit[y] provided by [the School District]." 42 U.S.C. § 12131(2); *see Brumfield v. City of Chicago*, 735 F.3d 619, 627 (7th Cir. 2013) (holding that "program or activity" can be conceptualized as "the public entity's outputs"). The ADA and Rehabilitation Act disability discrimination claims thus are dismissed as to the School District.

The Rehabilitation Act retaliation claims fare no better. To state such a claim, a plaintiff must allege that he "engaged in a statutorily protected activity," *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018), meaning that he acted "in good faith and with a reasonable and sincere belief that he [was] opposing unlawful [disability] discrimination," *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1096 (7th Cir. 1998) (emphasis omitted). Mohammed alleges that the School District retaliated against him for filing *Mohammed I*, Doc. 1-1 at ¶¶ 136, 142, but *Mohammed I* had nothing to do with disability discrimination, *see Mohammed I*, ECF No. 1-1. The Rehabilitation Act retaliation claims therefore are dismissed.

In sum, the ADA and Rehabilitation Act claims (Counts 14-18) are dismissed in their entirety.

### 2. Section 1983 Claims Against Bridges and Voise

Mohammed claims under § 1983 that Defendants' actions regarding the bus drivers and lunches violated his Fourteenth Amendment rights on several different theories: inference with the parent-child relationship, Doc. 1-1 at ¶¶ 82-85; class-of-one equal protection, *id*. at ¶¶ 148-149; substantive due process, *id*. at ¶¶ 150-151; and retaliation, *id*. at ¶¶ 157-158. Because only Bridges and Voise are alleged to have engaged in that conduct, and because the *Monell* claims have been dismissed against the School District, only Bridges and Voise, in their individual capacities, remain as defendants for those claims.

As for the parental rights theory, although "the right of parents to direct the education of their children … does exist," only a "direct and substantial interference" with that right will "trigger strict scrutiny." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1008 (7th Cir. 2019). The Seventh Circuit held in *St. Joan Antida* that withholding subsidized bus service was not "an intrusion on parental rights" because it did not impose such a "direct and substantial" burden. *Id*. at 1009. Neither are the far less significant burdens Mohammed challenges here. As a result, the School District's decisions regarding bus driver information and lunch drop-offs are subject to rational basis review. *Id*. at 1010.

Under the rational basis standard, "a challenger must negate 'every conceivable basis which might support' the classification." *Ibid*. (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993)). Voise pointed to confidentiality concerns regarding the bus driver information, Doc. 1-1 at ¶ 24, and Defendants point to the need for "parameters around school lunch procedures," Doc. 20 at 27. Those are conceivable bases to support the decisions Defendants made, thereby defeating Mohammed's bus driver and school lunch § 1983 claims insofar as they rest on a parental rights theory.

Mohammed's class-of-one equal protection claim—which relates only to the lunch drop-offs, Doc. 1-1 at ¶ 149—likewise fails. A class-of-one theory gives rise to rational basis review. *See 145 Fisk, LLC v. Nicklas*, __ F.3d __, 2021 WL 248881, at *8 (7th Cir. Jan. 26, 2021); *Makhsous v. Daye*, 980 F.3d 1181, 1183 (7th Cir. 2020); *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015). Faced with a motion to dismiss, a class-of-one plaintiff has the "burden to 'negative any reasonably conceivable state of facts that could provide a rational basis' for" the official action. *145 Fisk, LLC*, 2021 WL 248881, at *9 (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)); *see also id.* at *10 (affirming the dismissal of a class-of-one claim because the plaintiff's allegations failed to "carry its burden to invalidate [the official's] rational basis"); *Miller*, 784 F.3d at 1121 ("Thus, even at the pleadings stage, [a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment.") (alterations and emphasis in original) (quotation marks omitted). There is a conceivable rational basis here for Defendants' conduct regarding school lunches—the need to maintain orderly school lunch procedures—so the class-of-one claim is dismissed.

Finally, substantive due process claims are "limited to violations of fundamental rights." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). Mohammed identifies no authority for a fundamental right to receive information about school bus drivers or to drop off lunch at school, and the court is aware of none. And a § 1983 retaliation claim must be founded on a deprivation likely to deter the exercise of a constitutional right, *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009), but neither the bus driver nor lunch matters plausibly allege such a deprivation.

In sum, Counts 3-4 and 19-20 are dismissed in their entirety. Count 22 is dismissed as to Bridges and Voise insofar as it pertains to school lunches and bus drivers.

### B. State Law Claims

Mohammed brings three counts under the IHCA. Doc. 1-1 at ¶¶ 86-97, 152-156. The IHCA enumerates certain offenses that, if committed for a prohibited reason such as race or religion, allow for a damages suit. *See* 720 ILCS 5/12-7.1(c). Mohammed argues that Defendants' actions regarding lunches and bus drivers amounted to disorderly conduct, one of the listed predicates. Doc. 1-1 at ¶¶ 89, 95, 153. Illinois law defines "disorderly conduct" as "any act [done] in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). The pertinent statute then lists specific acts that qualify as disorderly conduct, such as falsely raising a fire alarm, § 26-1(a)(2), falsely making a bomb threat, § 26-1(a)(3), and spying through windows "for a lewd or unlawful purpose," § 26-1(a)(11). Defendants' actions regarding bus drivers and lunches do not fall within the scope of, or even remotely resemble, the specific acts the statute prohibits, nor can they be said to "breach the peace." The complaint therefore does not allege a predicate for liability under the IHCA. Counts 5-6 and 21 are dismissed.

Mohammed also brings an IIED count. Doc. 1-1 at ¶¶ 111-115. The first element of an IIED claim under Illinois law is "truly extreme and outrageous" conduct. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). "[T]he nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003); *see also Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 747 (7th Cir. 2008) (same). Defendants argue that the complaint fails to allege such conduct. Doc. 20 at 16-17. Mohammed responds as follows:

> The argument from Defendants' attorneys … is further evidence that the Defendants' so-called attorneys are actually garbage collectors in the disguised [sic] as attorneys and these garbage collectors bring the garbage collected on their way to this court and these unethical so-called attorneys

> commit fraud upon this court day in and day out and use this esteemed hall of
> justice, temple of justice as a dumping ground for their garbage.

Doc. 39 at 11-12. Defendants have the better of this argument. Keeping bus drivers' personal

information confidential does not go beyond all possible bounds of decency, nor does imposing a

rule that has the effect of requiring a parent to prepare his child's lunch before school. *See*

*Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (Illinois law) (affirming

dismissal of an IIED claim where the "alleged conduct was not so severe that a reasonable

person could not be expected to endure it, and it did not go beyond all possible bounds of

decency"). Count 9 is dismissed.

Mohammed also brings a personal injury count, Doc. 1-1 at ¶¶ 126-128, which seeks

damages "for the injury caused to his body and different organs of his body due to IIED and

other violations," Doc. 39 at 16. But Mohammed does not identify, in either his complaint or his

opposition brief, what bodily injury he suffered as a result of Defendants' bus driver and lunch

decisions. *See Simmons v. Garces*, 763 N.E.2d 720, 731 (Ill. 2002) (holding that, "in every

negligence case," the plaintiff must "show a causal connection between the deviation [from the

standard of care] and the injury"). Count 13 is dismissed.

Finally, Mohammed alleges a civil conspiracy among Defendants to commit the other

wrongful acts. Doc. 1-1 at ¶¶ 123-125. Because the allegations regarding bus drivers and lunch

drop-offs fail to state any claim, the derivative conspiracy claim is dismissed as well. *See Horist*

*v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) ("[A] conspiracy is not an independent tort.

Where … a plaintiff fails to state an independent cause of action underlying its conspiracy

allegations, the claim for a conspiracy also fails.") (quotation omitted). Count 12 is dismissed as

to the School District, Bridges, and Voise—and also as to Weiss because she is the sole

remaining defendant. *See Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994) ("Civil conspiracy consists of a combination of *two or more* persons … .") (emphasis added).

## V.     Remaining Claims Against Weiss

Weiss moves to dismiss the remaining claims against her. The complaint alleges that Weiss lied to Mohammed's children by telling them that he was a child molester and pressured them to report him to the authorities. Doc. 1-1 at ¶¶ 18, 161, 166. Based on these facts, Mohammed claims that she inflicted on him the torts of defamation, IIED, and personal injury, *id*. at ¶¶ 69-74, 111-115, 126-128; infringed his liberty interest in his relationship with his children and retaliated against him in violation of the Fourteenth Amendment, *id*. at ¶¶ 75-81, 103-110, 157-158; and committed disorderly conduct in violation of the IHCA, *id*. at ¶¶ 98-102.

None of these claims can be dismissed at the pleading stage for failure to state a claim. The court must accept as true Mohammed's allegation that Weiss told his children false and extremely derogatory things about him. *See Zahn*, 815 F.3d at 1087. Those alleged comments were "statements imputing the commission of a crime," which is one of the "five categories of statements that are defamatory *per se*" under Illinois law. *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904 (7th Cir. 2007). It is also plausible that such conduct would qualify as "extreme and outrageous" to support an IIED claim. *McGrath*, 533 N.E.2d at 809. Although the personal injury claim might be duplicative of the IIED claim, the federal rules permit redundant pleading. *See* Fed. R. Civ. P. 8(d)(2). Such damaging falsehoods, told to a child by a public official, also could "place a substantial burden on the traditional parent-child relationship," *Troxel v. Granville*, 530 U.S. 57, 64 (2000), such that dismissal of the Fourteenth Amendment claims would be inappropriate at this stage. *See Doe v. Heck*, 327 F.3d 492, 524 (7th Cir. 2003) ("[T]he defendants violated the plaintiffs' right to familial relations by conducting a custodial interview of [a child] without notifying or obtaining the consent of his parents and by targeting

the plaintiff parents as child abusers.").  Finally, the statutory definition of disorderly conduct

includes causing a crime to be reported while knowing the report to be false.  *See* 720 ILCS

5/26-1(a)(4).  The complaint alleges that Weiss did just that, and it further alleges that she did so

based on Mohammed's gender, religion, or disability status.  Doc. 1-1 at ¶ 102.  Those

allegations state a claim under the IHCA.

Weiss argues that those claims are untimely under the one-year statute of limitations for

state claims and the two-year statute of limitations for § 1983 claims.  Doc. 20 at 10-12.  But

assuming, as the court must, that Mohammed did not learn about Weiss's counseling activities

until after he filed *Mohammed I* in November 2018, Doc. 1-1 at ¶ 12, the court cannot hold on

the pleadings that the complaint here, filed in September 2019, was untimely.  *See Thornton v.

M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015) ("Under Illinois's discovery rule, the

statute of limitations begins to run when the potential plaintiff knows or reasonably should know

of his injury and that the injury was wrongfully caused."); *United States v. Norwood*, 602 F.3d

830, 837 (7th Cir. 2010) ("The [federal] discovery rule starts the statute of limitations running

only when the plaintiff learns that he's been injured, and by whom.").

Next, Weiss asserts immunity under a state statute and federal qualified immunity.

Doc. 20 at 26-28.  She cannot succeed on either defense at this stage.  The Illinois immunity

statute provides that "a public employee serving in a position involving the determination of

policy or the exercise of discretion is not liable for an injury resulting from his act or omission in

determining policy."  745 ILCS 10/2-201.  "Section 2-201 immunizes an individual defendant

only to the extent that the action [she] is being sued for involves both the making of a policy

choice and the exercise of discretion."  *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 679

(7th Cir. 2009).  Here, the court cannot hold on the pleadings that Weiss's alleged violations of

22

state law were "decisions requiring a governmental entity to balance competing interests and to make a judgment call." *Ibid*. Similarly, "[b]ecause a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quotation marks omitted). Although that rule is not ironclad, the law was clearly established in Spring 2017 that parents have a constitutional right to raise their children without unlawful interference. *See Troxel*, 530 U.S. at 64; *Doe v. Heck*, 327 F.3d at 524.

Last, Mohammed brings a claim for indemnification by the School District of any judgment against Weiss under 745 ILCS 10/9-102. Doc. 1-1 at ¶¶ 119-122. The Seventh Circuit has held that, under that statute, a plaintiff may join an Illinois municipal entity alongside a municipal employee. *See Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997). Because some claims against Weiss survive dismissal, the indemnity claim in Count 11 may proceed.

## Conclusion

Defendants' motions to dismiss are granted in part and denied in part. Counts 3-6, 10, 12, 14-21, and 23-25 are dismissed as to all Defendants. Counts 1-2, 7-9, 13, and 22 may proceed as to Weiss, but they are dismissed as to all other Defendants. Count 11 may proceed against the School District. The dismissals are with prejudice because Mohammed does not request leave to amend in his briefs opposing dismissal, Doc. 39 at 33; Doc. 40 at 15, and does not suggest how an amendment might cure the dismissed claims. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not

make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in … dismissing a complaint with prejudice … when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint."). Weiss and the School District shall answer the surviving portions of the operative complaint by March 2, 2021.

February 8, 2021

_____

United States District Judge