UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABDUL MOHAMMED, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 6525 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| NAPERVILLE COMMUNITY UNIT SCHOOL DISTRICT 203 and RACHEL WEISS, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In November 2018, Abdul Mohammed filed a *pro se* suit (not this one) against Naperville Community Unit School District 203 and two of its employees, Erin Anderson and Susan Vivian, asserting claims under 42 U.S.C. § 1983, the Illinois Hate Crimes Act ("IHCA"), 720 ILCS 5/12-7.1, and Illinois common law. *Mohammed v. Anderson*, No. 18 C 8393 (N.D. Ill. removed Dec. 21, 2018), ECF No. 1-1. The defendants in that suit moved for sanctions based on Mohammed's litigation-related misconduct, described in greater detail below. *Id.*, ECF No. 98. The court granted the motion and dismissed the suit with prejudice. *Id.*, ECF Nos. 117-119 (reported at 2019 WL 3943669 (N.D. Ill. Aug. 21, 2019)). The Seventh Circuit affirmed. *Mohammed v. Anderson*, 833 F. App'x 651 (7th Cir. 2020).

Less than three weeks after the 18 C 8393 suit was dismissed, Mohammed filed this suit against the School District, Anderson, Vivian, and thirteen new defendants. Doc. 1-1. (Docket entries in this suit are cited as Doc. __, while docket entries in other cases are cited as __ C ____, ECF No. __.) In addition to claims that had been dismissed in the 18 C 8393 suit, Mohammed in this suit alleged violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and other

1

violations of § 1983, the IHCA, and Illinois common law. Doc. 1-1. The claims here arise from four categories of alleged misconduct: (1) Defendants caused false reports of child abuse to be brought against Mohammed, *id*. at ¶¶ 14-15; (2) Vivian and Rachel Weiss, another School District employee, provided harmful counseling to his children, *id*. at ¶¶ 16, 18; (3) the District refused to give him information about its school bus drivers, *id*. at ¶¶ 22-28; and (4) the District barred him from dropping off his son's lunch at school, *id*. at ¶¶ 35-43, 149.

Defendants moved to dismiss. Docs. 17, 19. The court granted the motions in large part. Docs. 94, 96 (reported at 2021 WL 428831 (N.D. Ill. Feb. 8, 2021)). Mohammed's claims based on the allegedly false reports of child abuse and wrongful counseling were dismissed as to all Defendants except Weiss. 2021 WL 428831, at *2-7. Some Defendants were dismissed because Mohammed alleged nothing about their conduct, *id*. at *2-3, and others because of the preclusive effect of the 18 C 8393 judgment, *id*. at *4-7. The claims based on the school bus drivers and lunch drop-offs were dismissed because those allegations failed to state a viable claim under any of the theories that Mohammed put forward in opposing dismissal. *Id*. at *7-10.

On February 10, 2021, two days after the court issued its ruling, Mohammed sent this email to the court's courtroom deputy:

> Ms. Deanes, I have the following question for Judge Feinerman: How come it is OK to only ban me from dropping Lunch for my son whereas other parents can drop Lunch for their children? Please answer the above question via email either to me or to my attorney, Marco Rodriguez. Sincerely, Abdul Mohammed.

Doc. 99. The email copied Mohammed's attorney of record, Marco Rodriguez. *Ibid*. On February 16, the court ordered Mohammed to show cause why he should not be sanctioned for sending that email, and Rodriguez to show cause why he should not be sanctioned for not taking any ameliorative steps following his client's improper conduct. *Ibid*.

2

Rodriguez responded in writing on behalf of himself and Mohammed and appeared at a hearing on the matter. Docs. 103, 106. Rodriguez stated that he did not become aware of the February 10 email until the show cause order issued on February 16. Doc. 103 at ¶ 2. Asked at the hearing how that could be, given that he was copied on the email, Rodriguez claimed that he receives many emails and that he simply did not see it at the time. Rodriguez also wrote in his response and reiterated at the hearing that, prior to February 10, he had advised Mohammed not to send any more emails or otherwise communicate with anyone about his lawsuits. Doc. 103 at ¶ 3. Rodriguez added that, when he confronted Mohammed about the February 10 email, Mohammed responded that he thought the email was acceptable because of the stress he was feeling due to this lawsuit. *Id*. at ¶ 5.

District courts have the "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980) (describing the "'well-acknowledged' inherent power of a court to levy sanctions in response to abusive litigation practices"). "Sanctions imposed pursuant to the district court's inherent power are appropriate where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker v. Williams*, 682 F.3d 654, 661-62 (7th Cir. 2012); *see also Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). That power is "permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) (quotation marks omitted).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44; *see also Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 502

(7th Cir. 2009) ("A district court should be cautious when exercising such inherent authority."); *Mohammed*, 833 F. App'x at 654 ("A district court must show restraint in exercising its inherent sanctioning power … ."). The inherent power should be used "sparingly, to punish misconduct (1) occurring in the litigation itself, not in the events giving rise to the litigation … and (2) not adequately dealt with by other rules." *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 391 (7th Cir. 2002); *see also Chambers*, 501 U.S. at 50 ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power."); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015) (reversing the district court's inherent authority sanctions order because "Rule 11 was adequate for the court's purposes"). "But if in the informed discretion of the court, neither [a] statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Chambers*, 501 U.S. at 50.

Inherent authority sanctions are appropriate here. Mohammed is not a lawyer, so 28 U.S.C. § 1927 does not apply. *See* 28 U.S.C. § 1927 (allowing the imposition of monetary sanctions on "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously"); *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) (holding that § 1927 did not authorize sanctions against a foreign lawyer not admitted to practice in any American jurisdiction). Nor does Mohammed's email to the courtroom deputy fall within the scope of Rule 11, as it was not a legal filing placed with the court itself. *See* Fed. R. Civ. P. 11(b) (imposing certification requirements on "a pleading, written motion, or other paper" presented "to the court" through "signing, filing, submitting, or later advocating it"); *Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 887 (7th Cir. 2020) (describing the subject of the

Rule 11 certification requirements as a "legal filing"); *Brunt v. SEIU*, 284 F.3d 715, 721 (7th Cir. 2002) ("[Rule 11] is principally designed to prevent baseless filings.").

So only the court's inherent authority provides a firm basis for sanctions. Sending a harassing message to a member of the court's staff was a grossly inappropriate way for Mohammed to respond to a setback in litigation and thus sanctionable. Mohammed was disappointed that the court dismissed his lunch drop-off claim, but he had options to seek redress in an appropriate manner. He could have asked this court to revisit its "nonfinal dismissal order … at any time before final judgment," *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018), or he could have sought review in the Seventh Circuit through appeal of a final judgment, *Sere v. Bd. of Trs. of Univ. of Ill.*, 852 F.2d 285, 288 (7th Cir. 1988). Mohammed chose instead to demand from the court an account of why Defendants' conduct was "OK," with that answer to be sent to him or his attorney. Doc. 99.

The Seventh Circuit addressed a somewhat similar situation in *In re Mann*, 229 F.3d 657 (7th Cir. 2000):

> In the various papers Mann has filed in connection with her mandamus petition, she has made numerous disparaging remarks about the judges of the Seventh Circuit Court of Appeals. Litigants are understandably disappointed when they do not prevail in court, but that does not give them the license to attack the integrity of the judiciary. Such abusive conduct will not be tolerated, not even from a *pro se* litigant. … If Mann persists in unprofessional behavior, we hereby reiterate that sanctions will be imposed.

*Id*. at 659. The reasons that Mohammed's allegations stated no claim regarding the lunch drop-offs were set forth in the court's opinion, 2021 WL 428831, at *7-10, which of course was available to Mohammed. It follows that Mohammed's email was not a sincere request for an explanation of the dismissal, but rather a sarcastic rhetorical question attacking the court's integrity. That is sanctionable.

5

The next question is whether dismissal is the appropriate sanction, or whether some lesser measure would suffice. "[O]utright dismissal … is a particularly severe sanction, yet it is within the court's discretion." *Chambers*, 501 U.S. at 45; *see also White v. Williams*, 423 F. App'x 645, 646 (7th Cir. 2011) ("District judges have the inherent authority to impose sanctions—including dismissal—when a litigant engages in conduct that abuses the judicial process."). The court may rely on its inherent authority to "dismiss a case for … bad faith conduct in litigation," *Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 758 (7th Cir. 2005), so long as dismissal is "proportionate to the gravity of the offense," *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008). "[T]here is no requirement that the district court find prejudice" to the opposing party before dismissing a suit, "[n]or is there a requirement that a district court impose graduated sanctions." *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018). Yet because "the sanction of dismissal with prejudice must be infrequently resorted to," the court must carefully consider whether a less serious sanction would be appropriate. *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000); *see also Ayoubi v. Dart*, 640 F. App'x 524, 528 (7th Cir. 2016) ("A court should generally consider lesser sanctions before settling upon dismissal.").

Under the particular facts and circumstances of this case and Mohammed's many other cases, the court finds that dismissal with prejudice is the appropriate sanction because he has shown time and again that no lesser sanction can deter him—or thus far has deterred him—from engaging in abusive behavior toward others involved in his suits. As the court noted in imposing monetary sanctions on Mohammed in another of his lawsuits, *see Mohammed v. Illinois*, No. 20 C 3482, 2021 WL 270755, at *2 (N.D. Ill. Jan. 27, 2021), Mohammed is now subject to filing bars in the Seventh Circuit, this District, and Illinois state courts and agencies due to his inappropriate and/or frivolous litigation conduct. *See Mohammed v. NLRB*, No. 20-3178 (7th

Cir. Jan. 11, 2021) (barring Mohammed from "proceeding in forma pauperis in any new or pending case, in the district court or court of appeals, until he has paid, in full, all outstanding fees and costs for all of his lawsuits"); *In re Mohammed*, No. 20 C 3479 (N.D. Ill. Aug. 13, 2020) (imposing a 12-month filing bar on any new civil lawsuits by Mohammed in this District), *aff'd*, 834 F. App'x 240, 240 (7th Cir. 2021) (holding that "the Executive Committee reasonably disciplined Mohammed for abusive litigation practices"); *Mohammed v. ICNA Relief USA*, No. 2019 L 000075 (Cir. Ct. DuPage Cnty. Sept. 10, 2019) (indefinitely enjoining Mohammed from prosecuting actions in Illinois courts and administrative agencies), *aff'd*, 2020 IL App (2d) 190828-U, ¶ 52 (Ill. App. 2d Dist. Oct 19, 2020) (upholding the state trial court's injunction and admonishing Mohammed that "Illinois courts are not meant as instruments for personal vendettas").

Those filing bars were not unheralded punishments for a first-time offender. Rather, they were the culmination of Mohammed's years-long campaign to enlist the courts in his efforts to harass his ex-wife and others associated with her. This behavior began in 2016, when she moved to a domestic abuse shelter and filed for divorce. *Mohammed*, 2020 IL App (2d) 190828-U, ¶ 4. Since then, Mohammed has filed at least twenty lawsuits against her and others in state and federal court, the full history of which was ably summarized by a defendant in another suit. *Mohammed v. Illinois*, 20 C 3482 (N.D. Ill. filed June 10, 2020), ECF No. 21, at 3-9. Mohammed was warned early in his litigation campaign that sanctions would be imposed if he continued down this path. *See Mohammed v. Prairie State Legal Servs., Inc.*, No. 18 C 4248, 2018 WL 11277407, at *2 (N.D. Ill. June 22, 2018) (Guzman, J.) ("[F]uture frivolous attempts to embroil the federal courts in the ongoing DuPage County proceedings could result in the imposition of sanctions … .").

Mohammed did not heed that warning, as evidenced by (among other things) this court's dismissal of the 18 C 8393 suit as a sanction for his continued abusive conduct. *Mohammed*, 2019 WL 3943669, at *5. In particular, Mohammed in that suit engaged in an "orchestrated and long-running campaign of harassment" through a series of emails to defense counsel that ranged from the "inexplicably juvenile" to the "profane" to the "inappropriately belligerent." *Id*. at *3. For instance, Mohammed insisted that he had no responsibility to respond to discovery: "All your Interrogatories and production of Documents are just harassment and I trashed it in a [illegible emoji] in my kitchen." *Id*. at *1. Yet Mohammed still expected prompt responses to his own inquiries: "Low Life reply to this email in next 5 minutes or else I will call your office. Reply to my emails in a timely manner. I own you." *Id*. at *2. He called opposing counsel "Cry Babies," "Shameless Creatures," and a "sissy." *Id*. at *1-2. The dismissal sanction imposed in the 18 C 8393 suit should have served as an explicit warning to Mohammed that sending harassing emails to people involved in a suit can and will result in dismissal.

The cherry atop the already iced cake is that Mohammed's counsel, Rodriguez, specifically advised him "not to send any further emails or otherwise communicate with others in connection with any pending litigation." Doc. 103 at ¶ 3. Yet despite all the dismissals and filing bars he had sustained over the past few years, Mohammed did not take that sound advice. Two days after this court imposed monetary sanctions in the 20 C 3482 case, on January 29, 2021, Mohammed emailed a defendant in that case demanding certain disclosures and stating that "[f]ailure to provide this information will result in your ass getting sued for violation of FOIA Act [sic]." 20 C 3482, ECF No. 57, at 4. Less than two weeks later, on February 10, Mohammed sent the email at issue here, directed to the court's courtroom deputy. These latest actions show that Mohammed is incorrigible when it comes to litigation-related misconduct. No

8

lesser sanction than dismissal would account for the persistent and serious nature of his transgressions or could possibly deter him against future misdeeds.

    Accordingly, the court dismisses this suit with prejudice in the exercise of its inherent authority.  No monetary sanctions will be assessed against Mohammed, as Defendants incurred no costs in connection with the show cause order or the circumstances giving rise to the order, and in any event monetary sanctions on top of the dismissal sanction in this case and the monetary sanctions imposed in his other cases would serve no useful purpose.

April 5, 2021                                              _____
                                                                    United States District Judge